MARY J. COVEY, APPELLANT, v. JOHN C. KEEGAN ET
AL., APPELLEES.

[FILED APRIL 1, 1890.]

Real Estate: CONTRACT: RESCISSION: FRAUD NOT SHOWN.
    M. J. C. held a quarter section of land in Nebraska, mortgaged
    for $100, which she deeded to J. E. L. in exchange for an im-
    proved lot in Collins's addition to Denver, employing J. C. K.,
    an attorney, and certain real estate agents, who negotiated the
    exchange, and also a loan of $225 on the Denver lot on deed of
    trust, under which the lot was subsequently sold. C., being
    without land or lot, brought her bill against L. and K., setting
    up her own mental disability to contract, and conspiracy by de-
    fendants to defraud her of the land, praying that the title be re-
    stored, and not offering to restore the lot. The court, finding
    that there was neither conspiracy nor acts of fraud, confirmed
    the title in J. E. L. *Held*, on examination of the evidence, that
    it was amply sufficient to sustain the findings and judgment of
    the district court.

APPEAL from the district court for Franklin county.
Heard below before GASLIN, J.

*E. A. Fletcher*, for appellant.

*Sheppard & Black, contra.*

COBB, CH. J.

This cause was brought to this court on appeal from the
district court of Franklin county.

It was alleged in the court below that on November 20,
1885, the appellant was the owner in fee of the southeast
quarter of section 14, township 2 north, of range 16 west of
the 6th P. M., in said county, subject to a mortgage of $100,
which land she was induced to transfer by warranty deed
of that date, recorded November 26, 1885, to the defend-
ant John E. Leet, through and by the advice and influence

of an attorney, John C. Keegan, who is also made defendant. In exchange for this land the defendant Leet, on November 19, 1885, transferred to the plaintiff by warranty deed, recorded December 1, 1885, lot number 19 in Collins' addition to the town of Denver, Colorado. It is alleged that at the time of this transaction the plaintiff was sojourning in Denver under both mental and physical disabilities, from the infirmities of sickness and age; that the defendant Keegan, as her attorney and adviser, falsely represented that there was a negotiation about to be perfected for the sale of the Denver lot for $950, out of which the plaintiff would be paid $700, as a consideration for her Nebraska land, which was the amount she asked for it, and that the remainder, $250, was the fee charged for the negotiation and sale of the lot, and that the deeds for both the land and the lot would be held by the attorney until the sale was perfected. Under these misrepresentations, by the advice of her attorney, it is alleged the plaintiff was induced to execute a trust deed or mortgage on the lot to F. O. Stewart, as trustee for John Creedon, to secure the $250, the remainder proceeds of the lot, which deed was placed on record December 1, 1885, and which, subsequent to the commencement of this suit, and before trial, was foreclosed, and the lot sold for $270 to Creedon. The appellant alleges that she was deceived in the transaction; that she received no consideration for the land; that the lot was not valued above $300, and asks that the title to the land be restored to her.

The defendant John C. Keegan answered, admitting that the plaintiff was, as alleged, the owner of the land described as situate in Franklin county, Nebraska, and denying every other allegation by her set forth.

The defendant John E. Leet answered, admitting that the plaintiff, on November 20, 1885, was the owner of the land described as situated in Franklin county, Nebraska, and that she is an aged woman; that he had not negotiated

a sale of the Denver lot and had not paid her $700 or any other sum of money for the land, and says, as to the allegation that she was a stranger in Denver, without friends, and unacquainted with the value of real estate, or that defendant Keegan was pretending to act as her professional adviser, he has no knowledge or belief, and therefore denies the same; that, upon the completion of the transaction complained of, defendant, in consideration of the deed by plaintiff of the land described, delivered to her a deed in fee to the Denver lot and the possession of the same; that she has not since that time restored, or offered to restore, possession to him; that on December 1, 1885, the plaintiff executed to F. O. Stewart a trust deed to secure the payment of $225 to John Creedon, who is now the owner and in possession of said lot.

The plaintiff's reply denies each and every allegation of new matter set up by the defendants.

The cause was submitted to the court below, without a jury, upon the pleadings and evidence, and the court found that there was no intent on the part of defendant Leet to cheat or defraud the plaintiff in any way, and that there was no collusion or conspiracy by and between the defendants Leet and Keegan, of and concerning the land and lot described, to cheat, wrong, or defraud the plaintiff in any way; that the defendant Leet received the land described for a good and valuable consideration and holds the same by a good and lawful title, and which is hereby confirmed and vested in him.

It appears from the evidence, and is admitted by the parties, that the plaintiff was the owner of the quarter section of land described in Franklin county, upon which there was a mortgage incumbrance of $100. There is no direct evidence as to the value of the land. She was in Denver during a portion of the year 1885, engaged in teaching the art of painting, and was advanced in years. But though her case, as presented, was made to turn

largely upon her age and infirmities of body and mind, and consequent inability to transact business affairs, and although both she and her daughter were examined as witnesses on her behalf, there is no testimony as to her exact age.    One witness for the defense was of the opinion that she was over fifty, and another that she was sixty or sixty-five.    Her testimony, and that of her daughter, is to the effect that from an illness from partial paralysis of years before, she was now, at times, when under the stress of excitement, subject to confusions of will and purpose tending to mental aberration.    In her own words, relative to the execution of the deed for her land, "she had done a good day's work the day before in light painting, and thought she would do the same that day, but when she came back from the attorney's office she could not do any work ; that was the first time, on Wednesday morning before she signed the deed; on the Friday following she had a fullness and pressure in the head she never felt before, and had gone without sleep two nights, and was not crazy but just stupid.    She had never had that feeling before, but since then she had it frequently.    It continued until the next spring, and then she went out into the garden and worked in the open air, and seemed to get rid of it by exercise.    She could only explain it in that way." From this evidence it is inferred that she was in need of money for expenses in Denver.    It also appears, from evidence of witnesses on the part of defendants, that she was anxious to have a home in Denver, and to have her daughter, then a school teacher in Lincoln, come out to Denver and both keep house there together, the daughter to follow her own vocation there, for which she had made a conditional arrangement with the school authorities to give the daughter employment.    It is obvious that she was anxious to trade her land in Nebraska for city property in Denver, and for the furtherance of this she engaged the services and took the advice of the defendant Keegan, a

practicing attorney of that city. He brought her into communication with a firm of real estate agents through which she agreed to exchange her land for a lot on which was a small brick house, No. 19 of Collins' addition to Denver, owned by defendant Leet, who was to assume the mortgage on her Nebraska land. Deeds to this exchange and transfer were executed by the parties.

It appears from the evidence on behalf of defendants that it was agreed between the plaintiff and the real estate agents that she was to pay them $125 for services in the exchange of property, and that she did pay them $111 from the proceeds of a mortgage which she placed on the lot, and that defendant Leet was also called upon to pay a commission to the agents of $25 for like services. This is the only evidence tending to charge Leet with conspiracy or fraud in the transaction, or casting suspicion upon his title to the quarter section of land. The most that could be claimed from the fact of Leet's having paid a portion of the broker's or agent's commissions is that claimed by the plaintiff's counsel, that after he agreed to pay such commissions, or otherwise employed an agent in the transaction, he was chargeable with notice of any facts connected therewith which may have been brought home to the agents, or which were in fact known to him connected with his agency in bringing about the exchange of property, and as shown by the record there were no facts or other suspicious circumstances in the whole transaction, whether known to the agents or not, which would tend to vitiate the sale and purchase of the properties as between those parties. There appears at the time to have been no considerable disparity of value between the Denver lot and improvements and the Nebraska land and its incumbrance; and from a careful reading of the record, I am unable to say on which property, if either, the disparity is to be found.

The misfortunes testified to by the plaintiff are not to be attributed to the sale and purchase of property in this

transaction, but rather to the fact that for a consideration she placed a mortgage, or deed of trust, on her Denver lot which was subsequently foreclosed and the property sold. It is the theory of the plaintiff's case to connect that mortgage with the sale and exchange of her quarter section of land by making them one transaction, and charging on defendant Leet the loss which she sustained in the sale of the Denver lot.    There does seem some affinity between the two transactions.    One of the real estate agents testified that she made it a condition of the exchange that he should assist her in obtaining a loan on the Denver lot, which he subsequently did.    Again, as before stated, the plaintiff paid out to the agents nearly half the proceeds of the loan for negotiating the exchange.    This she must have considered when making terms for their services.    It is evident that she was in need of ready money, her Nebraska land being already incumbered, and a loan not being readily obtained on that property, it was natural enough to endeavor to exchange it and provide for a loan in the transaction.    But, be this as it may have been, taking the facts established by the whole evidence, the trial court held, and was justified in finding, that the exchange of property, and the deed of trust by the plaintiff, so far as the defendant Leet was concerned, as well as the attorneys and agents of the plaintiff, were fairly and honestly conducted, and within the common course of such transactions.

As to the disabilities of the plaintiff in 1885, even if we take her own testimony, and that of her daughter, and of the two medical men who were called, the court was fully justified in holding that a business transaction on her part was binding; but in addition to this testimony, and I may say contrary to it, is that of the defendants, and a number of witnesses called by them, that she was, to all appearance, at all the times and occasions of their interviews with her, a person of sound and discriminating mind, in full possession of her faculties, and this evidence, had that

of the plaintiff been never so conclusive of incapacity, would have justified the court in its judgment and decree. The judgment of the district court is affirmed.

JUDGMENT AFFIRMED.

THE other judges concur.